IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DYNAENERGETICS GMBH & CO. KG, and DYNAENERGETICS US, INC., § § § Plaintiffs, § § VS. § § HUNTING TITAN, INC., and § HUNTING ENERGY SERVICES, INC., § § Defendants. § | CIVIL ACTION NO. H-19-1615 |

## ORDER

DynaEnergetics GmbH & Co. KG and DynaEnergetics US, Inc. (DynaEnergetics), sued Hunting Titan, Inc. and Hunting Energy Services, LLC (Hunting), alleging that Hunting had obtained and used DynaEnergetics's confidential information relating to the DS Trinity System, an 8-inch perforating gun used in the oil and gas industry. (Docket Entry No. 1). DynaEnergetics asserted trade-secret misappropriation under Texas and federal law; tortious interference with contract, conversion of confidential information, and unfair competition under Texas law; and moved for a preliminary injunction. (*Id.*; Docket Entry No. 22). Hunting counterclaimed for unfair competition by misappropriation, alleging that it was DynaEnergetics that had misappropriated Hunting's technology. (Docket Entry No. 47). DynaEnergetics now moves to dismiss the counterclaim on two grounds: failure to state a claim and federal preemption. (Docket Entry No. 51). Hunting responded, and DynaEnergetics replied. (Docket Entry Nos. 55, 61).

Based on the amended complaint and the counterclaim, the motion and response, and the applicable law, the court grants DynaEnergetics's motion to dismiss the counterclaim, with prejudice because it is preempted under federal law. The reasons for this ruling are set out below.

I.      **Background**

DynaEnergetics and Hunting develop and manufacture technology for the oil and gas industry. In early 2019, the two companies announced new perforating systems, each with short-length guns, within one week of each other. (Docket Entry No. 43 at ¶¶ 53, 64). DynaEnergetics sued Hunting, and Hunting counterclaimed. (Docket Entry Nos. 1, 47).

Hunting alleges that it developed the H-2 Perforating System "[t]hrough extensive time, labor, skill, and money." (Docket Entry No. 47 at ¶ 160). In its response to DynaEnergetics's motion to dismiss the counterclaim, Hunting explains that in July 2017, it began to develop a system with an "ultra-short perforating gun," a "3-shot cluster," and a "modular detonator." (Docket Entry No. 55 at 4). Hunting filed a patent application for its invention no later than February 2018.[1] (Docket Entry No. 47 at ¶ 160). Hunting alleges that this application included most of the features that DynaEnergetics alleges are its own trade secrets or confidential information. (*Id.*).

Hunting alleges that on March 6, 2018, an employee of EOG Resources, a DynaEnergetics customer, "became aware" of the H-2 System. (*Id.* at ¶ 161). That employee, Jon Holt, allegedly told PerfX Wireline Services, a field operator and user of perforating systems, about the system and its short-length guns. (*Id.* at ¶¶ 161–162). Hunting alleges that PerfX then approached Hunting about purchasing the system in order to bid on, and use the system in, an EOG project. (*Id.* at ¶ 162). Hunting informed PerfX that the H-2 System was not yet available. (*Id.* at ¶ 163). Hunting alleges that either PerfX or another source told EOG that the H-2 System was not yet commercially available. (*Id.* at ¶ 164). EOG then met with DynaEnergetics, described the features of the H-2 System, and asked DynaEnergetics to copy the features into its technology, which it

---

[1] In its response, Hunting alleges that the patent was filed in January 2018. (Docket Entry No. 55 at 17 n.4).

did. (*Id.* at ¶¶ 164–165). Hunting alleges that DynaEnergetics gained a "special advantage" by using this information without the expense Hunting incurred in developing it, putting Hunting at a competitive disadvantage. (*Id.* at ¶ 169).

## II. The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Claims may be dismissed under Rule 12(b)(6) on the basis of a dispositive issue of law, including federal preemption. A complaint may also be dismissed if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

The court should generally give a plaintiff at least one chance to amend under Rule 15(a) before dismissing the action with prejudice for factual pleading insufficiency, unless it is clear that to do so would be futile. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012); *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) ("[Rule 15(a)] evinces a bias in favor of granting leave to amend." (quotation omitted)); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). "Whether leave to

amend should be granted is entrusted to the sound discretion of the district court." *Pervasive Software*, 688 F.3d at 232 (quotation omitted).

In considering a motion to dismiss for failure to state a claim, the court is to consider "the contents of the pleadings, including attachments." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Documents attached to a motion to dismiss are "considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Id.* at 498–99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). The court may also "take judicial notice of matters of public record." *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)

"On a Rule 12(b)(6) motion, a district court generally must limit itself to the contents of the pleadings, including attachments." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (quotation omitted). "The court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Id.*; *see, e.g.*, *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) ("[B]ecause the defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss."). A district court errs by considering evidence "outside the pleadings—and not referred to therein—without converting the motion to dismiss into a motion for summary judgment." *Brand Coupon*, 748 F.3d at 635; *see also Katrina Canal Breaches*, 495 F.3d at 205 ("Generally, in deciding a motion to dismiss for failure to state a claim, if matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." (quotation omitted)); *Isquith for and on Behalf of Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 (5th Cir. 1988) ("[W]hen non-pleading materials are filed with a

4

motion to dismiss, . . . a district court has complete discretion under the Federal Rules of Civil Procedure to either accept the exhibits submitted or not, as it sees fit.").

## III. Analysis

DynaEnergetics argues that Hunting has recited the elements of a claim for unfair competition by misappropriation, but failed to allege necessary factual support. (Docket Entry No. 51 at 5). Hunting responds that it provided specific allegations that plausibly raise a claim for relief. (Docket Entry No. 55 at 1).

To state a plausible claim for unfair competition by misappropriation under Texas law, a plaintiff must allege facts showing:

> (i) the creation of plaintiff's product through extensive time, labor, skill and money, (ii) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., a "free ride") because defendant is burdened with little or none of the expense incurred by the plaintiff, and (iii) commercial damage to the plaintiff.

*Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 774 (5th Cir. 2017) (quoting *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 218 (Tex. App.—Waco 1993, writ denied).

Hunting's counterclaim alleges enough to raise a reasonable inference of its claimed right to relief. For the first element of the claim, Hunting alleges that it developed the H-2 System "[t]hrough extensive time, labor, skill and money," including creating and filing a patent application. (Docket Entry No. 47 at ¶ 160); *see Mission Trading Co., Inc. v. Lewis*, No. 16-3368, 2017 WL 4941408, at *5 (S.D. Tex. Nov. 1, 2017) (allegations that the plaintiff had "performed substantial marketing and promotion" for its trademarks and "dedicated 'substantial efforts and financial resources' to the growth of its company" sufficiently supported this first element). The activities Hunting alleged require extensive time, labor, skill, and money.

5

In support of the second element, Hunting alleged that DynaEnergetics received information about the technical features of the H-2 System from EOG, features DynaEnergetics copied to develop its own competitive product. The facts alleged, if proved, would support an inference of misappropriation. Finally, Hunting has alleged enough to plead injury. Hunting and DynaEnergetics directly compete. (Docket Entry No. 43 at ¶ 63; Docket Entry No. 47 at ¶ 63); *see Sw. Airlines Co. v. Farechase, Inc.*, 318 F. Supp. 2d 435, 441 (N.D. Tex. 2004) ("Southwest alleges in its Complaint that Outtask's Cliqbook product is in competition with Southwest's SWABIZ product; that is enough to state a claim for misappropriation."). Although brief, Hunting's allegations state a plausible claim for relief.

Preemption is the next issue. DynaEnergetics argues that federal copyright and patent law preempt the state-law claim of unfair competition by misappropriation. Federal copyright law preempts a claim for unfair competition by misappropriation when: (1) the work that asserts the right comes within the subject matter of copyright; and (2) the right the author is protecting is equivalent to the exclusive rights within the general scope of copyright. *Thermotek, Inc.*, 875 F.3d at 773 (citing *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 785 (5th Cir. 1999)). Copyright preemption reaches works, including ideas, "that fall within the subject matter (that is, the scope) of copyright, regardless whether the works are actually afforded protection under the Copyright Act." *Id.* (quoting *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 656 (5th Cir. 2017)); *see Ultraflo*, 845 F.3d at 657 ("This distinction led us to hold . . . that state claims based on ideas fixed in a tangible medium of expression fall within the subject matter of copyright even though copyright law does not protect the mere ideas.").

Hunting alleges that John Holt at EOG "became aware" of the H-2 Perforating System such that he could share information about it, including its short-length guns. (Docket Entry No. 47 at ¶¶ 161–162). Hunting does not specify how Holt learned about the H-2 System, but Hunting does

allege that the information Holt learned about involved an idea, design, concept, or technical feature that Hunting had fixed in such tangible media as the drawings and specifications used for the patent application. (*See* Docket Entry No. 55 at 4; Docket Entry No. 56-1 at 8). Novel ideas, concepts, or technical features fixed in tangible media are within federal copyright law. *See Synergy Indus., L.P. v. Nat'l Oilwell Varco, L.P.*, No. 4:18-CV-1968, 2018 WL 8808056, at *1 (S.D. Tex. Nov. 9, 2018) (the plaintiff alleged that the defendant had "reproduce[d] . . . a wireline unit or Synergy part, including its design, configuration, arrangement and selection of components thereof . . . Plaintiff's claim seeks to protect designs, configurations, arrangements and selections of components, the same types of works that fall within the subject matter of copyright." (internal quotation omitted)).

Hunting argues that federal preemption does not apply because its counterclaim did not allege that DynaEnergetics's misappropriation involved any written materials. (Docket Entry No. 55 at 14). Hunting argues that copyright preemption requires a misappropriation of written materials, or else it would "gut the [state-law] tort of unfair competition." (*Id.* at 14–16). DynaEnergetics responds that Hunting is attempting to add another element to the preemption test. (Docket Entry No. 61 at 5).

The argument that Hunting's claim does not seek protection for a work protected by federal copyright law is similar to the argument advanced in *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d at 653. In that case, the court considered whether a butterfly valve design, considered separately from its explanatory drawings, was within the scope of federal copyright law. *Id.* at 656 ("Because the valve design—the work in which Ultraflo asserts a right—is what was allegedly misappropriated, Ultraflo argues that its claim does not seek protection for a work protected by the copyright laws."). The court held that the design was "within the subject matter of copyright," even if it was not itself copyright-protected, and that federal copyright law preempted Ultraflo's

7

claim. *Id.* at 657–59. To the extent that Hunting's claim alleges misappropriation of features of the H-2 System as they appeared in a tangible medium, federal copyright preemption applies.

To the extent that Hunting argues that features of the physical H-2 System itself, including the perforating gun and its technical features, were misappropriated, federal patent preemption applies. Federal patent law preempts the Texas claim for unfair competition by misappropriation to the extent that the claim seeks to protect "the functional aspects of a product which [has] been placed in public commerce absent the protection of a valid patent." *Thermotek*, 875 F.3d at 777 (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.* 489 U.S. 141, 156 (1989)). The Texas tort "would likely obstruct Congress's goals by 'offer[ing] patent-like protection to intellectual creations which would otherwise remain unprotected as a matter of federal law.'" *Id.* (quoting *Bonito Boats*, 489 U.S. at 156)). Both unfair competition by misappropriation and federal patent law protect the "sweat equity" needed for most product development. *Id.* at 778.

Hunting argues that patent preemption does not apply because the H-2 System was not "publicly known" when the alleged misappropriation took place. (Docket Entry No. 55 at 17). But Hunting has not alleged that the misappropriated information was confidential when Holt "became aware of" it or shared it with DynaEnergetics. The nonpublic nature of the misappropriated product is an element of a claim under the Texas Uniform Trade Secrets Act, but not of a claim for unfair competition by misappropriation. *See* TEX. CIV. PRAC. & REM. CODE § 134A.002(6)(A). Trade secret claims are not preempted by federal copyright or patent law. *See GlobeRanger Corp. v. Software AG U.S., Inc.*, 836 F.3d 477, 487 (5th Cir. 2016) (a state-law trade secret claim is not preempted by federal copyright law); *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 652 n.2 (5th Cir. 1997) (discussing that federal patent law does not preempt state trade secret law). Hunting does not assert a Uniform Trade Secrets Act claim, but instead claims that its unfair competition by misappropriation counterclaim is seeking to protect the competitive edge of its

"sweat equity." (Docket Entry No. 55 at 16). This claim falls within the scope of federal patent law. *See Thermotek*, 875 F.3d at 778 ("[T]his claim, like patent law, 'is specifically designed to protect the labor—the so-called 'sweat-equity'—that goes into creating a work.'" (quoting *Alcatel*, 166 F.3d at 788)). Because Texas unfair competition law "does not limit the period of protection" or "condition protection on the invention's novelty, nonobviousness, or utility," it interferes with federal patent policy. *Id.* To the extent that Hunting alleges misappropriation of the H-2 System or its technical features, federal patent law preempts Hunting's counterclaim.

Hunting attempts to distinguish *Thermotek*, 875 F.3d at 778, and *Alcatel*, 166 F.3d at 788, by arguing that the cases were both decided after a jury trial on the factual allegations in the complaint, making it too early in this case to rule on preemption. (Docket Entry No. 55 at 17). The counterclaim allegations are sufficient to state a claim under Texas law, and are also sufficient to allow the court to rule that the claim is preempted by federal law.

## IV.  Conclusion

DynaEnergetics's motion to dismiss the counterclaim is granted, with prejudice, because federal preemption applies and Hunting cannot state a claim. (Docket Entry No. 51).

DynaEnergetics agreed to dismiss its claim for unfair competition by misappropriation if Hunting's counterclaim was dismissed. (Docket Entry No. 51 at 10 n.3). DynaEnergetics's claim for unfair competition is also dismissed.

SIGNED on October 15, 2019, at Houston, Texas.

_____

Lee H. Rosenthal
Chief United States District Judge